IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHETTY SEVUGAN, individually and on behalf of all others similarly situated;<br><br>                              Plaintiff,<br><br>v.<br><br>DIRECT ENERGY SERVICES, LLC, a Delaware corporation,<br><br>                              Defendant. | No.:<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, Chetty Sevugan, individually and on behalf of all others similarly situated, alleges as and for his Class Action Complaint against defendant Direct Energy Services, LLC, (hereinafter "Direct Energy" or "Defendant"), upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by his attorneys, as follows:

**NATURE OF THE ACTION**

1. This action seeks to redress the deceptive pricing practices of Direct Energy that have caused thousands of Illinois consumers to pay considerably more for their electricity than they should otherwise have paid.

2. Direct Energy has taken advantage of the deregulation of the retail natural gas and electricity market in Illinois by luring consumers into switching energy suppliers with false promises that it offers market based variable rates for natural gas and electricity. Direct Energy lures consumers into switching by offering a teaser rate that is lower than local utilities' rates for

electricity supply. When the teaser rate expires after a couple of months, Defendant switches customers to a variable rate, which it represents reflects "market-related factors."

3. Direct Energy's representations are deceptive. In fact, Direct Energy's variable rates are substantially higher than those otherwise available in the energy market, and are not reflective of the market factors on which Direct Energy purports to base its variable rates. Direct Energy's business model is simple: after the teaser rate expires, it charges exorbitant rates that are not based on market-related factors, namely the rates that other retailers and energy customers' incumbent utility providers charge for natural gas and electricity and wholesale costs. As a result, Illinois consumers are being fleeced millions of dollars in exorbitant charges for energy.

4. This suit is brought pursuant to 815 ILCS § 505 *et seq* and the common law of Illinois on behalf of a class of consumers who purchased natural gas and/or electricity from Direct Energy from August 8, 2011 to the present. It seeks, *inter alia*, injunctive relief, actual damages and refunds, attorneys' fees, and the costs of this suit.

**PARTIES**

5. Chetty Sevugan is a natural person and citizen of Illinois.

6. Direct Energy is a corporation organized under the laws of Delaware with its principal office in Houston, Texas.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class are citizens of States different from Defendants.

8. Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendant regularly transacts and solicits business in this District.

**SUBSTANTIVE ALLEGATIONS**

9. In 1997, Illinois deregulated the market for retail electricity supply, a major break with past policy. Prior to deregulation, gas and electricity were supplied and distributed solely by local utility companies. Over the last several years, a number of states, including Illinois, have begun to change the regulations in the energy industry purportedly to enhance competition between energy providers. The notion is that competition would result in independent energy service companies ("ESCOs") being more aggressive than the utility in reducing wholesale purchasing costs and thereby lower retail residential rates.

10. As part of the deregulation plan, ESCOs (like Direct Energy) do not have to file the natural gas and electricity rates it charges with the Illinois Commerce Commission or the method by which it set its rates.

11. If a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility. The customer's existing utility continues to bill the customer for both the energy supply and delivery costs. The only difference to the customer is which company sets the price for the customer's energy supply.

12. After a customer switches to an ESCO, the customer's energy supply charge— based on a customer's kilowatt hour usage—is calculated using the supply rate charged by the ESCO and not the regulated rate charged by customer's former utility. The supply rate charged is itemized on the customer's bill as the number of kilowatt hours ("kWh") multiplied by the rate. For example, if a customer uses 300 kWh at a rate of 11.0¢ per kWh, the customer will be billed $33.00 (300 x $.11) for his or her energy supply.

13. Direct Energy takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge Illinois consumers exorbitant rates for electricity. In theory, energy deregulation allows consumers to shop around for the best energy rates, and it allows consumers to take advantage of market-based rates that decline when wholesale costs decline. However, Direct Energy exploits deregulated markets with false promises that it offers market based variable rates in order to deceive consumers into purchasing energy from it. In fact, Direct Energy's rates are substantially higher than other ESCOs or local utilities and they are not reflective of changes in wholesale rates.

14. Direct Energy lures consumers to switch from their local utility companies or other energy suppliers, promising that it will offer market based variable rates for electricity. Direct Energy's scheme falsely promises energy rates based on market-related factors. However, in reality, after switching to Direct Energy as a supplier, consumers' energy bills increase dramatically.

## **Direct Energy Charges Improperly High Electricity Rates**

15. Direct Energy engages in a classic bait and switch deception scheme. Direct Energy lures consumers into switching to its electricity supply service by offering teaser rates that are much lower than its regular rates.

16. In or around August 2011, a Direct Energy representative solicited him to switch from his utility company, Commonwealth Edison, to Direct Energy with promises that he would save money if he switched to Direct Energy.

17. In or around August 2011, Plaintiff made the switch to Direct Energy for electricity. The contractual agreement is memorialized in a document titled "ELECTRICTY

SUPPLY CONTRACT." (attached as Exhibit "A"). Thereafter, they paid the rate they were charged.

18. Plaintiff was initially placed on an introductory fixed rate plan for electricity. The contractual agreement states, "During the Initial Term, you will pay Direct Energy for your electric generation service at the price set for the Initial Term, as set forth in Section 1 above." (Electricity Supply Contract, paragraph 3)

19. Plaintiff was subsequently switched to a variable rate plan. The contractual agreement states, "Upon completion of the Initial Term, this Agreement will automatically renew on a month-to-month basis at a variable price per kWh with no early termination fee. Direct Energy will charge you at a variable price per kWh based upon generally prevailing market prices for electricity in the PJM market at the Electric Utility load zone for the applicable period, plus an adder, determined solely by Direct Energy in its discretion." (Electricity Supply Contract, paragraph 5)

20. The representation that Direct Energy's variable rate would be based on market-related factors was reinforced by Direct Energy's "RESIDENTIAL UNIFORM DISCLOSURE STATEMENT FOR ILLINOIS." (attached as Exhibit "B") With respect to renewal, the disclosure statement states, "After the Initial Term, your service will automatically continue on a month-to-month basis, and you will pay a variable price per kWh. Direct Energy will charge you at a variable price per wKh based upon generally prevailing market prices for electricity in the PJM market at the electric utility load zone for the applicable period, plus an adder, determined solely by Direct Energy in its discretion."

21. Any reasonable consumer would understand that based on these representations that Direct Energy's rates would be based on market-related factors and would expect that the

rates would be commensurate with the rates offered by the local utility and other ESCOs. Plaintiff reasonably expected that Direct Energy's variable rates for electricity would be based on market-related factors, i.e., reflective of the price of electricity on the market and the rates offered by Plaintiff's former utility and other competitors in the market.

22. A reasonable consumer would also understand and expect that a variable rate based on market-related factors would be reflective of changes in the wholesale market price for electricity. After all, that is the point of deregulation, to allow consumers to take advantage of the efficiencies of the market and to enjoy lower retail process when the wholesale market drops.

23. But the rates Direct Energy charged Plaintiff were not commensurate with rates otherwise available in the market or with changes in wholesale rates.

24. The variable rates that Direct Energy charged Plaintiff, and the corresponding rates Commonwealth Edison ("Com.Ed." would have charged for electricity (which is a reasonable representation of the available market rates), evidence that the Direct Energy rates were as high as 145% of Com.Ed. rates for 2012; as high as 120% of Com.Ed. rates for 2013; as high as 150% of Com.Ed. rates for 2014; as high as 240% of Com.Ed. rates for 2015; and as high as 350% of the Com.Ed. rates for the 2016 period that Plaintiff remained on the Direct Energy plan.

25. Specifically, in the electricity market, the rates Illinois utilities like Com.Ed. charge is an accurate reflection of rates that are based on market conditions. In fact, Illinois utilities purchase electricity for their customers on the spot or daily market at the same market price per kilowatt hour other electricity retailers, including Direct Energy, can purchase electricity for their customers.

26. For utility customers in Illinois who do not get their electricity supply from an ESCO, the utilities buy electricity from the Illinois wholesale electricity markets.

27. The rates utilities like Com.Ed. charge are an accurate reflection of rates that are based on market factors. In other words, the electricity rates that utilities charge are an accurate measure of what market based rates should be.

28. That Direct Energy's rate was substantially higher than the local utility's rate therefore demonstrates that Direct Energy's rate is not in fact based on market-related factors. At multiple points, Direct Energy charged Plaintiff a rate that substantially higher the rate charged by Com. Ed. If Direct Energy's rate was based on wholesale costs (as any reasonable consumer would expect of a variable rate based on market-related factors), then its rate would have also declined during this period (because Com.Ed.'s rate is reflective of changes in the wholesale market cost of electricity).

29. A reasonable consumer would understand that the price the local utility or other ESCO charges is part of market conditions and that a priced based on market-related factors would be consistent with the price charged by the local utility or other ESCO. However, Direct Energy's prices are substantially higher than local utilities' rates, as well as the rates other ESCOs charge.

30. Thus, Direct Energy's statements with respect to the electricity rates it will charge are materially misleading because consumers do not receive a price based on market-related factors. Instead, consumers are charged rates that are substantially higher. Direct Energy fails to disclose this material fact to its customers.

31. Defendant Direct Energy's statements regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an

energy supplier is price. No reasonable consumer who knows the truth about Direct Energy's exorbitant rates would choose Direct Energy as an electricity supplier.

32. In fact, all that Direct Energy offers customers is electricity delivered by local utilities, commodities that have the exact same qualities as electricity supplied by other ESCOs or local utilities. There is nothing to differentiate Direct Energy from other ESCOs or local utilities, and the potential for a price based on market-related factors is the only reason any reasonable consumer would enter into a contract for electricity with Direct Energy.

33. Direct Energy knows full well that it charges a rate that is unconscionably high, and the misrepresentations it makes with regard to the rate being market based were made for the sole purpose of inducing consumers to sign up for Direct Energy's electricity supply so that it can reap outrageous profits to the direct detriment of Illinois consumers without regard to the consequences high utility bills cause such consumers. As such, Direct Energy's actions were actuated by actual malice or accompanied by wanton and willful disregard for consumers' well-being.

34. Direct Energy's misstatements and omissions caused injury to Plaintiff because he believed that his rate would be based on market-related factors when switching from Commonwealth Edison to Direct Energy's electricity plan. Plaintiff would not have enrolled in Direct Energy's plan but for its false misrepresentations. Had Plaintiff known that the rates he would be charged by Direct Energy would be substantially higher than his local utility provider (and not based on market-related factors), he would not have made the decision to switch.

35. Had Direct Energy charged Plaintiff a rate that was actually based on market-related factors, Plaintiff would have been charged a substantially lower rate, and he was injured accordingly when he paid his bill.

36. Defendant's violations of 815 ILCS § 505 *et seq* and the common law are applicable to all members of the Class, and Plaintiffs are entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

## CLASS ALLEGATIONS

37. Plaintiff bring this action pursuant to CPLR § 901 on behalf of himself and all similarly situated Direct Energy Illinois state customers who were charged a variable rate from August 8, 2011 to the present.

38. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or complaint.

39. Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which any Defendant has or had a controlling interest, or which Defendant otherwise control or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of a Defendant.

40. This action is properly maintainable as a class action. As provided in CPLR § 901(a)(1), the proposed Class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. As provided in CPLR § 901(a)(2), there are questions of law or fact common to all Class Members that predominated over any questions affecting only individual members. Specifically, the common questions of fact and law include:

    i. whether Defendants violated 815 ILCS § 505 *et seq*;

    ii. whether Defendants breached Direct Energy's contract with Illinois consumers by charging variable rates not based on market-related factors;

    iii.  whether Defendants breached the covenant of good faith and fair dealing by exercising unilateral price-setting discretion in bad faith, i.e., to price gouge;

    iv.  whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

    v.  whether Defendant should be enjoined from continuing to charge variable rates not based on market-related factors.

  41.  As provided in CPLR § 901(a)(3), the proposed lead Plaintiff's claims, one or any one of them, are typical of those of the proposed class because the proposed lead Plaintiff's claims are based upon the same facts and circumstances (practice or course of conduct) that gives rise to the claims of the other class members and based upon the same predominate legal theories.

  42.  As provided by CPLR § 901(a)(a), the representative Plaintiff can adequately and fairly represent the class. No conflict of interest exists between the representative Plaintiff and the Class Members because Defendant's alleged conduct affected them similarly.

  43.  Moreover, pursuant to CPLR § 901(a)(4), the Plaintiff and his chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the Plaintiff's attorneys are competent in the areas of law relevant to this Complaint and have sufficient experience and resources to vigorously represent the Class Members and prosecute this action.

  44.  As provided by CPLR § 901(a)(5), a class action is superior to any other available method for adjudicating this controversy. The proposed class is (i) the surest way to fairly and expeditiously compensate so large a number of injured persons that constitute the Class, (ii) to keep the courts from being inundated by hundreds or thousands of repetitive cases, and (iii) to

reduce transactions costs so that the injured class members can obtain the most compensation possible. Accordingly, class treatment presents a superior mechanism for fairly resolving similar issues and claims without repetitious wasteful litigation relevant to this action.

## CLAIMS FOR RELIEF

### COUNT I
### (Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq*)

45. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further allege:

46. 815 ILCS 505/2 declares unlawful "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce[.]"

47. Direct Energy knowingly and willfully misrepresented to Plaintiff and the Class that Direct Energy's rates are based on market-related factors and reflective of wholesale electricity costs in the market when its rates are not, in fact, based on market-related factors.

48. Defendant knowingly and willfully failed to inform consumers of the material fact that Direct Energy's rates are substantially higher than those otherwise available in the market, and intends that consumers rely upon the deception.

49. Defendant's deception caused Plaintiff and the class to pay substantially higher rates than those otherwise available in the market.

-11-

50. Through the conduct described above, Direct Energy has engaged in deceptive acts and practices that resulted in injury to Plaintiff and the other members of the Class.

51. By reason of the foregoing, Direct Energy has violated ICFA and should be enjoined from continuing to fail to disclose that Direct Energy's rates are substantially higher than those otherwise available in the market and misrepresenting that its rates are based on market-related factors.

52. Defendant is also liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees and costs.

## COUNT II
**(Breach of Contract)**

53. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further allege:

54. Plaintiff and the Class entered into a valid contract with Direct Energy for the provision of electricity.

55. Pursuant to the Agreement, Direct Energy agreed to charge a variable rate for electricity purportedly based on market-related factors.

56. Pursuant to the Agreement, Plaintiff and the Class paid the variable rates charged by Direct Energy for electricity.

57. However, Direct Energy failed to perform its obligations under the Agreement because Direct Energy charged variable rates for electricity that were not based on market-related factors.

58. Plaintiff and the Class were damaged as a result because they were billed, and they paid, a charge for electricity that was substantially higher than they would have been had Direct Energy based its rates on market-related factors.

59. By reason of the foregoing, Direct Energy is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## COUNT III
### (Breach of Implied Covenant of Good Faith & Fair Dealing)

60. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further allege:

61. Every contract in Illinois contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

62. Under the contract, Direct Energy has unilateral discretion to set the variable rates for electricity based on market conditions.

63. Plaintiff reasonably expected that the variable rates for electricity would reflect the market prices for electricity and that Defendant Direct Energy would refrain from price gouging. Without these reasonable expectations, Plaintiff and other Class members would not have agreed to buy electricity from Defendant Direct Energy.

64. Defendant Direct Energy breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate Plaintiff and other Class members' reasonable expectations that the variable rates for electricity would be based on market-related factors.

65. Defendant acted in bad faith when Direct Energy made contractual promises to base its rates on market-related factors knowing full well that its rates were substantially higher than rates that are actually based on market-related factors, including rates charged by competitors and customers' incumbent utilities.

66. As a result of Defendant's breach, Defendant Direct Energy is liable to Plaintiff and other Class members for actual damages in an amount to be determined at trial and attorney's fees.

## COUNT IV
### (Unjust Enrichment)

67. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein, and further allege:

68. By engaging in the conduct described above, Direct Energy has unjustly enriched itself and received a benefit beyond what was contemplated in the contract, at the expense of Plaintiff and the other members of the Class.

69. It would be unjust and inequitable for Defendant to retain the payments Plaintiff and the Class made for excessive electricity charges.

70. By reason of the foregoing, Direct Energy is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(a) Issue an order certifying the Class defined above, appointing the Plaintiff as Class representative, and designating his Attorneys as Class Counsel;

(b) Find that Direct Energy has committed the violations of law alleged herein;

(c) Enter an order granting monetary relief and damages on behalf of the Class;

(d) Determine that Defendant has been unjustly enriched as a result of their wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(e) Determine that Defendant breached the contract with the Class and enter an appropriate order awarding monetary and injunctive relief;

(f) Enter an order granting all appropriate relief on behalf of the Class under the applicable state laws;

(g) Render an award of compensatory damages, the amount of which is to be determined at trial;

(h) Render an award of punitive damages;

(i) Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(j) Grant all such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

CHETTY SEVUGAN
Class Plaintiff,

By: Richard J. Burke_____
   One of His Attorneys

Richard J. Burke
Jamie E. Weiss
Zachary A. Jacobs
**QUANTUM LEGAL LLC**
513 Central Avenue
Suite 300
Highland Park, Illinois  60035
(847) 433-4500

Jonathan Shub
**KOHN SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, Pennsylvania 19107
(215) 238-1700

**Attorneys for Plaintiff and
 Proposed Class**